UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANA ALVEREZ | Case No. 1:15-cr-123-SEB-DML-02<br><br>ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☐ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 1:15-cr-00123-SEB-DML |
| ) | |
| ANA ALVEREZ ) | |
| a/k/a ANA AMELIA ALVAREZ, ) | -02 |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Ana Alverez's motion for reduction of sentence, dkt. 216, filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Ms. Alverez asks the Court to reduce her sentence of imprisonment to time served. For the reasons explained below, Ms. Alverez's motion is **DENIED**.

### I.
#### BACKGROUND

A jury convicted Ms. Alverez on March 19, 2019, of three counts of access device fraud (Counts 1–3) and ten counts of aggravated identity theft (Counts 4–13). Dkt. 158. Ms. Alverez and two cohorts used a skimming device to obtain information for hundreds of credit accounts, re-encoded that information onto credit cards in their possession, and then used the cards to make more than $50,000 in fraudulent purchases from stores in Central Indiana. *See* dkt. 164 at ¶¶ 1–19.

The U.S. Sentencing Guidelines advised a prison sentence between 41 and 51 months on Counts 1–3 and a sentence of 24 months on Counts 4–13. *Id.* at ¶¶ 67–68. The Court had discretion

to impose sentences on Counts 1–3 that ran concurrent to one another and sentences on Counts 4–13 that ran concurrent to one another. By statute, however, sentences on Counts 4–13 must run consecutive to the sentences on Counts 1–3. 18 U.S.C. § 1028A(b)(2).

On August 19, 2019, the Court sentenced Ms. Alverez to a prison terms of 36 months on Counts 1–3 and 24 months on Counts 4–13 (consecutive to the sentence on Counts 1–3). *See* dkt. 191. Thus, the Court departed downward by five months from the guidelines range on Counts 1–3. The 24-month sentence on Counts 4–13 was mandatory. 18 U.S.C. § 1028A(a)(1).

In explaining the basis for Ms. Alverez's sentence, the Court discussed the factors listed at 18 U.S.C. § 3553(a). The Court found that the scope of Ms. Alverez's crimes—involving more than $50,000 in losses and 647 credit accounts—was "substantial" and showed that she was "fully engaged in what was going on." Dkt. 191 at 36:7–16. On the other hand, the Court found that Ms. Alverez's minimal criminal history and her age—then 55 years old—suggested recidivism was unlikely and weighed in favor of a shorter sentence. *Id.* at 37:15–21. The Court also determined that cultural factors related to Ms. Alverez's immigration to the United States from Cuba may have made her more vulnerable to becoming involved in the fraud scheme and weighed in favor of a downward departure. *Id.* at 37:22–39:6.

Ms. Alverez is now 56 years old and imprisoned at FMC-Carswell. Dkt. 222-1. Her projected release date is June 13, 2023. *Id.* Crediting time served while she awaited sentencing, Ms. Alverez is less than two years into her five-year sentence.

Ms. Alverez asserts that she is especially vulnerable to complications from COVID-19 and that her heightened risk is an extraordinary and compelling reason for her immediate release from prison. Ms. Alverez attributes this heightened risk to numerous medical conditions. Most

3

significantly, she states that she suffers from a long list of cardiovascular conditions, including cardiomyopathy, congestive heart failure, atrial fibrillation, and blood clots. *See* dkt. 216 at 9.

The United States disputes whether Ms. Alverez actually has active diagnoses for all these conditions and whether they actually place her at heightened risk for suffering complications from COVID-19. However, in June 2020, Bureau of Prisons (BOP) medical professionals prescribed Ms. Alverez three months' medication for atrial fibrillation. Dkt. 222-2 at 9. In July 2020, Ms. Alverez received six months' medication for hyperlipidemia, heart failure (cardiomyopathy), and hypertension. *Id.* at 8. And, as of September 2020, the BOP identified hyperlipidemia, hypertension, atrial fibrillation, and heart failure as Ms. Alverez's "current" (as opposed to "resolved") medical conditions for Ms. Alverez. *Id.* at 109. The Centers for Disease Control report that heart failure and cardiomyopathies increase a person's risk of severe illness from COVID-19 and that other cardiovascular diseases, including hypertension, may increase that risk. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last visited Oct. 1, 2020).

## II.
### LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." However, the Court may do so only "if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in U.S.S.G. § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

---

[1] Until December 21, 2018, only the U.S. Bureau of Prisons (BOP) could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

Subsections (A)–(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).[2] There is no dispute that, if Ms. Alverez qualifies for compassionate release, she does so under the catchall provision.

If the Court finds extraordinary and compelling circumstances, it still must find that Ms. Alverez is not a danger to the community and that a reduction is warranted by the § 3553(a)

---

[2] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Ms. Alverez's motion is due to be denied even if the Court assumes that the policy statement is not binding and that is has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

factors. The factors pertinent to Ms. Alvarez's motion are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed—":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(1)–(2).

### III.
#### ANALYSIS

Considering the factual circumstances discussed in Part I, the Court finds no sentence reduction warranted at this time. The Court assumes for purposes of this motion that Ms. Alverez's cardiovascular ailments are serious and place her at a heightened risk of suffering complications if she contracts COVID-19. Even so, the Court cannot find that she presents considerably less of a danger to the community for purposes of § 3142(g) than she did 13 months ago or that the § 3553(a) analysis has changed significantly in that brief time.

As the Court noted at sentencing, the scope and magnitude of Ms. Alverez's crimes—involving more than 600 credit accounts and $50,000—were vast. *See* 18 U.S.C. § 3553(a)(1). The seriousness of these crimes is reflected by Congress's mandate that identity thieves serve a two-year sentence *in addition to* whatever sentence is imposed on the underlying fraud charge. *See* 18 U.S.C. § 1028A(b)(2). Crediting her for time served before sentencing, Ms. Alverez has spent 18 months in prison. Releasing Ms. Alverez after serving only three-quarters of that mandatory add-

7

on sentence would neither reflect the seriousness of her offenses, promote respect for the law, nor deter similar conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(B).

Ms. Alverez's short time in prison also counsels against finding that she is less likely to commit further crimes than she was at the time she was sentenced. *See* 18 U.S.C. §§ 3142(g), 3353(a)(2)(C). The Court recognized at sentencing that Ms. Alverez's age made her less likely than other criminals might be to commit more crimes after release. The Court remains mindful, however, that Ms. Alverez was in her early 50s when she commenced her fraud scheme and is only a year older now than she was at sentencing. Additionally, Ms. Alverez does not assert that her health has worsened significantly since sentencing—or since she committed her crimes, for that matter. The Court does not find that Ms. Alvarez's age or health make her significantly less likely to return to crime than she was a year ago—especially given that one can perpetrate fraud from the safety of her own home.

The same analysis applies to the final factor, the need to provide educational or vocational training or other correctional treatment. 18 U.S.C. § 3553(a)(2)(D). Ms. Alverez notes that she completed 44 hours of educational courses in February and March 2020. Dkt. 216-5. The Court commends those efforts and encourages Ms. Alverez to continue them. However, they do not indicate that Ms. Alverez no longer needs training or correctional treatment, and they certainly do not outweigh the other facts that strongly discourage a sentence reduction at this time.

In denying this motion, the Court does not take lightly the risks and hardships Ms. Alverez may face through continued imprisonment, including the risks presented by the COVID-19 pandemic. However, given the circumstances discussed above, the Court cannot justify reducing to time served the sentence it entered only 13 months ago.

## IV.
## Conclusion

Ms. Alverez's motion for reduction of sentence, dkt. [216], is **denied**.

**IT IS SO ORDERED.**

Date: _____10/6/2020_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record.